UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERESSA SHAKER | : | CIVIL ACTION NO. |
| | : | 3:02-CV-1401(AWT) |
| VS. | : | |
| | : | |
| WINCHESTER BOARD OF EDUCATION | : | JANUARY 5, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendant, Winchester Board of Education ("Winchester"), by and through its undersigned attorneys, hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment. Winchester seeks partial summary judgment on the plaintiff's claim for unpaid overtime compensation and summary judgment on the plaintiff's claims for retaliation for complaining of the defendant's failure to pay legally required wages, for termination of employment in violation of Connecticut public policy, for adverse employment action in retaliation for her exercise of her rights of freedom of speech, freedom to petition for redress of grievances and freedom to associate herself with an attorney, and for intentional sex discrimination.

## I.      STATEMENT OF FACTS

The facts are set forth in Defendant's Local Rule 56(a)1 Statement[1] that accompanies Defendant's Motion for Summary Judgment and this Memorandum as per Local Rule 56(a)(1).

---

[1] Citation to the Defendant's Local Rule 56(a)1 Statement shall be set forth herein as "Def's L.R. Stmt. ¶ ___".

## II.    BACKGROUND

The plaintiff asserts the following claims:

(1)    unpaid overtime compensation, brought under Chapter 557 of the Connecticut General Statutes and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (Am. Compl. ¶ 10, 25, 28);

(2)    intentional and malicious disparate treatment in violation of the Equal Protection Clause of the United States Constitution and intentional sex discrimination in violation of the Fourteenth Amendment of the United States Constitution (brought under 42 U.S.C. § 1983) and in violation of Conn. Gen. Stats. §§ 46a-60, *et seq.*, and 42 U.S.C. §§ 2000e, *et seq.* (Am. Compl. ¶¶ 17, 18 and 33);

(3)    adverse employment action in retaliation for exercise of rights to freedom of speech, freedom to petition for redress of grievances, and freedom to associate with an attorney, in violation of the First Amendment to the United States Constitution, brought under 42 U.S.C. § 1983 (Am. Compl. ¶ 19);

(4)    termination of employment and deprivation of property rights without procedural due process, in violation of the Fourteenth Amendment to the United States Constitution, brought under 42 U.S.C. § 1983 (Am. Compl. ¶¶ 20, 21, 22);

(5)    breach of written employment contract, in violation of Connecticut law (Am. Compl. ¶ 23);

(6)    breach of implied employment contract, in violation of Connecticut law (Am. Compl. ¶ 24);

(7)    retaliation for complaining of the defendant's failure to pay legally required wages, in violation of Connecticut law (Am. Compl. ¶ 26);

2

(8)     termination of employment in violation of Connecticut public policy (Am. Compl. ¶ 27); and

(9)     deprivation of substantive due process in violation of the Fourteenth Amendment to the United States Constitution, brought under 42 U.S.C. § 1983 (Am. Compl. ¶ 29).

The defendant seeks partial summary judgment as to number (1) above and summary judgment as to numbers (2), (3), (7), and (8) above.

## III.    ARGUMENT AND LAW

A.    The Standard For Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *Newport Electronics, Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 205 (D. Conn. 2001). An issue is "genuine" only if the evidence is such that a reasonable fact finder could find for the party opposing the motion. *Equipmark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, and present such evidence as would allow a jury to find in its favor. *See Graham v. Long Island. R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Summary judgment rulings are favored inasmuch as the "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

    B.    <u>The Defendant Is Entitled to Partial Summary Judgment On The Plaintiff's Claim for Overtime Compensation Based On Expiration of The Statutes of Limitations</u> (Amended Complaint, Paragraphs 10, 25 and 28)

    The plaintiff seeks to recover unpaid overtime compensation pursuant to both state and federal statutes. *See* Am. Compl. ¶¶ 10, 25 and 28. To the extent the plaintiff is entitled to any overtime compensation, the defendant is entitled to partial summary judgment on the plaintiff's claim to the extent the claim is barred by the applicable statutes of limitations.

    The plaintiff brings this claim under both the Federal Fair Labor Standards Act ("FLSA") and the State Labor statutes, which provide that no employer shall employ any employee for a workweek longer than forty hours unless such employee receives remuneration or compensation for his employment in excess of the forty hours at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1); C.G.S. § 31-76c. Federal law provides that no action for unpaid overtime compensation may be brought more than two years after the cause of action accrues, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). State law provides that no action for unpaid overtime compensation may be brought more than two years after the right of action accrues, except that the limitation is tolled upon the filing with the Labor Commissioner of a complaint of failure to pay wages pursuant to the provisions of chapter 558 of the Connecticut General Statutes.[2] C.G.S. § 52-596. *See also, Butler v.*

---

[2] There is no evidence that the plaintiff has filed with the Labor Commissioner a complaint of failure to pay wages. In fact, the plaintiff did not allege in her Amended Complaint that she filed such claim and stated in her discovery responses that she had not done so. *See* Def's L.R. Stmt. ¶ 29.

*McIntosh*, 1997 Conn. Super. LEXIS 483 (Levine, J.) (attached as Exhibit 1).[3]  Accordingly, this claim is barred to the extent the plaintiff seeks to recover overtime which was due and unpaid more than two years before filing suit.

In this circuit, the general rule is that a cause of action accrues when the plaintiff could first have successfully maintained a suit based on that cause of action.  *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160 (2d Cir. 1989).  While the FLSA does not state when overtime compensation must be paid, "[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106.  Many courts agree that a cause of action accrues for purposes of 29 U.S.C. § 255 each paycheck.  *See, e.g., Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) ("the most logical point a cause of action for unpaid minimum wages or liquidated damages . . . accrues is the day the employee's paycheck is normally issued"); *Beebe v. United States*, 226 Ct. Cl. 308, 324 (Ct. Cl. 1981) (a separate cause of action accrued each payday when overtime compensation was excluded and so the statute of limitations barred recovery of any overtime compensation due the plaintiffs prior to two years before their petition was filed); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 902 (S.D. Ohio 2003) (each paycheck constitutes a separate violation with respect to nonpayment of overtime wages, and claims based on any paycheck that falls outside the statutory period are barred); *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 437 (D.N.J. 2001); *McIntyre v. Div. of Youth Rehab*, 795 F. Supp. 668, 674 (D. Del. 1992), and cases cited therein.

The cases interpreting the state statute are not dissimilar.  *See Shortt v. New Milford Police Dep't*, 16 Conn. App. 232 (1988) (where claim was for wages dating back to October 12,

---

[3] The defendant raised this issue of the statutes of limitations in paragraphs 2 and 3 of its Affirmative Defenses to the plaintiff's Amended Complaint.

1984, court noted that the action was commenced on October 10, 1986, just as the two year statute of limitations, C.G.S. § 52-596, was about to expire), *rev'd on other grounds*, 212 Conn. 294 (1989) (also commenting that the action was commenced just prior to the lapse of the two year statute of limitations); *Richardson v. Costco Wholesale Corp.*, 169 F. Supp. 2d 56, 60 (D. Conn. 2001) (where action was commenced on March 2, 1998, court dismissed claims based on conduct that occurred prior to March 2, 1996); *Corcoran v. F. & W. Welding Serv., Inc.*, 1998 Conn. Super. LEXIS 61, *1-2 (Skolnick, J.) (attached as Exhibit 2) (statute of limitations contained in Section 52-596 began to run when compensation was due and owing).

The plaintiff seeks to recover unpaid overtime compensation for the years 1997 through 2000.[4] *See* Def's L.R. Stmt. ¶¶ 27 and 28. The plaintiff filed her complaint on August 13, 2002. Accordingly, to the extent the plaintiff is entitled to any unpaid overtime compensation, the plaintiff's claims for overtime compensation which date back prior to August 13, 2000, are barred by the statutes of limitations, and the defendant is entitled to partial summary judgment as a matter of law in regard thereto.

C.    The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim For Retaliation For Complaining Of The Defendant's Failure To Pay Legally Required Wages, Because The Plaintiff Has No Independent Cause Of Action Against The Defendant For Such Retaliation And Has Otherwise Failed To Exhaust Her Administrative Remedies (Amended Complaint, Paragraph 26)

The plaintiff claims that the defendant retaliated against her for complaining of its failure to pay legally required wages, in violation of Connecticut Law. *See* Am. Compl. ¶ 26. The defendant is entitled to summary judgment on the retaliation claim on the basis that the plaintiff has no independent cause of action against the defendant for such retaliation, because the

---

[4] The plaintiff does not claim that she was not paid at all for her overtime work. Rather, the plaintiff claims she was not paid at one and one-half times her regular rate of pay.

plaintiff never filed a claim for overtime compensation with the Department of Labor, and because the plaintiff has failed to exhaust her administrative remedies.[5]

Although not clear, presumably the plaintiff claims the defendant retaliated against the plaintiff in violation of C.G.S. § 31-69b, which prohibits employers from discharging an employee because the employee filed a claim or instituted or caused to be instituted an investigation or proceeding under the labor or wages chapter of the Connecticut Statutes. Specifically, that statute provides:

> a) An employer shall not discharge, discipline, penalize or in any manner discriminate against any employee because the employee has filed a claim or instituted or caused to be instituted any investigation or proceeding under part III of chapter 557 or this chapter, or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by part III of chapter 557 or this chapter.

> (b) Any employee who believes that he has been discharged, disciplined, penalized or otherwise discriminated against by any person in violation of this section may file a complaint with the Labor Commissioner alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the commissioner shall hold a hearing. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee all appropriate relief including rehiring or reinstatement to his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discharged, disciplined, penalized or discriminated against. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees and costs. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court in accordance with the provisions of chapter 54.

---

[5] The defendant raised this issue of failing to exhaust administrative remedies in paragraph 12 of its Affirmative Defenses to the plaintiff's Amended Complaint.

Section 31-69b is contained within chapter 558, which also includes provisions for an employer's obligation to pay overtime compensation to its employees. The plaintiff claims the defendant failed to pay overtime compensation and then retaliated against the plaintiff for complaining of the defendant's failure to pay overtime compensation. The plaintiff has no right to this action for retaliation, because the plaintiff never filed a claim for unpaid overtime compensation with the Department of Labor. *See* Def's L.R. Stmt. ¶ 29. Alternatively, this claim for retaliation fails because the plaintiff has failed to exhaust administrative remedies provided by section 31-69b.

Section 31-69b provides a remedy through the Department of Labor ("DOL") for an employee whose employment is terminated in retaliation for filing a wage complaint with the DOL. A party aggrieved by the decision of the DOL may then appeal such decision to the Superior Court pursuant to the Uniform Administrative Procedure Act. *Lombardi v. Conn. Dep't of Labor*, 1998 Conn. Super. LEXIS 1974 (McWeeny, J.) (attached as Exhibit 3). Although an employee has a right of appeal once the DOL decision is rendered, the employee has no right to bring a direct action against his or her employer for violation of section 31-69b.

The plaintiff in this case not only never filed a wage complaint with the DOL, but she also never filed a complaint with the DOL alleging that the defendant retaliated against her for filing such a wage complaint. The Connecticut Supreme Court has recognized that "[w]hen a plaintiff has 'available to him administrative remedies that could have afforded him meaningful relief . . . his failure to [properly pursue those remedies] forecloses his access to judicial relief, because it deprives the trial court of jurisdiction to hear his complaint." . . . In addition, when a 'plaintiff fails to follow the administrative route prescribed by the legislature for his claim' . . .

the plaintiff fails to exhaust his or her administrative remedies." *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 168-69 (2000) (citations omitted).

The defendant is entitled to summary judgment on the plaintiff's claim for retaliation for complaining of the defendant's failure to pay overtime wages, because the plaintiff has no right of direct action therefor against the defendant, because the plaintiff never filed a claim for overtime compensation with the DOL, and because the plaintiff failed to exhaust her administrative remedies.

D.    The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim For
      Termination Of Employment In Violation Of Public Policy, Because The Plaintiff
      Otherwise Has An Available Remedy (Amended Complaint, Paragraph 27)

The plaintiff claims the defendant terminated the plaintiff's employment in violation of the public policy of the State of Connecticut. *See* Am. Compl. ¶ 27. The defendant is entitled to summary judgment on the claim for wrongful termination based on public policy, because the plaintiff otherwise has an available remedy.

As a general proposition, contracts for permanent employment, or for an indefinite term, are terminable at will. *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 158-59 (2000). However, there is a common law cause of action in tort for the discharge of an at will employee "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Id.* at 159. (Citations omitted; emphasis in original). In interpreting this exception, the Connecticut Supreme Court cautions that

> our adherence to the principle that the public policy exception to
> the general rule allowing unfettered termination of an at-will
> employment relationship is a narrow one . . . . We are mindful that
> courts should not lightly intervene to impair the exercise of
> managerial discretion or to foment unwarranted litigation.

*Id.* (Citation omitted). Consequently, the Connecticut Supreme Court has "rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 701 (2002). That is, "a finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a *valuable social policy* to go unvindicated." *Burnham*, 252 Conn. at 159-60, quoting *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn. App. 643 (1985) (emphasis added).

The plaintiff has the burden of showing that she is otherwise without remedy and that permitting her discharge to go unredressed would leave a valuable social policy unvindicated. *Gagnon v. Housatonic Valley Tourism Comm'n*, 2001 Conn. Super. LEXIS 2268, *16 (Hiller, J.) (attached as Exhibit 4), citing *Burnham*, 252 Conn. 153, 159-60. While it is not altogether clear what "public policy" the plaintiff alleges was violated by the defendant's action in terminating her position, there can be no question that the plaintiff cannot establish her right to recovery under this claim. The plaintiff has presented no public policy that was violated by her termination and, as is clear by the other counts in her amended complaint, she is not without remedy. Further, to the extent the public policy the plaintiff claims the defendant violated is section 31-69b, that same section provides the plaintiff with the administrative remedy of making

a complaint with the DOL.[6]  The plaintiff also has a statutory remedy under section 31-51m(c)

and has not exhausted all available administrative remedies under that section.  The plaintiff also

has other statutory and common law remedies, which she has asserted, for other claims in her

suit that are related to the termination of her employment, such as her constitutional claims,

breach of contract claim, and failure to pay overtime compensation claim.  The plaintiff simply

has stated no violation of public policy for which she is without a remedy.

Accordingly, the defendant is entitled to summary judgment as a matter of law on the

plaintiff's claim for termination of employment in violation of the public policy of the State of

Connecticut.

E.    The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim That The
      Defendant Subjected Her To Adverse Employment Action In Retaliation For Her
      Exercise Of Her Rights Of Freedom Of Speech, Freedom To Petition For Redress Of
      Grievances, And Freedom To Associate Herself With An Attorney, In Violation Of The
      First Amendment Of The U.S. Constitution, Because The Speech At Issue Was Not A
      Matter Of Public Concern (Amended Complaint, Paragraph 19)

The plaintiff claims the defendant subjected the plaintiff to adverse employment action in

retaliation for her exercise of her rights of freedom of speech, freedom to petition for redress of

grievances, and freedom to associate herself with an attorney, in violation of the First

Amendment of the United States Constitution.  *See* Am. Compl. ¶ 19.  The plaintiff brings this

claim pursuant to 42 U.S.C. § 1983.  Am. Compl. ¶ 2.  The defendant is entitled to summary

judgment on this claim on the basis that the speech at issue did not address a matter of public

concern.

---

[6]  Further, the plaintiff would have to prove that the defendant terminated her employment because she filed a claim
for unpaid overtime compensation with the DOL.  Since the plaintiff never filed a claim for unpaid overtime
compensation with the DOL, the plaintiff would never be able to prove that the defendant terminated her
employment based on a complaint to the DOL.  The defendant is, therefore, entitled to summary judgment on this
alternative basis.

A state may not condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142 (1983). However, a public employee who seeks to recover, pursuant to section 1983, on the grounds that adverse action has been taken against him because of the exercise of his First Amendment Speech rights must establish that his speech or conduct addressed a matter of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). That is, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147. Speech touches upon a matter of public concern when it can "fairly be considered as relating to any matter of political, social or other concern to the community." *Id.* at 146. The inquiry into the protected status of speech is one of law, not fact. *Id.* at 148 n7.

To make a prima facie case for her First Amendment retaliation claim, the plaintiff in this action has the burden to establish that her speech can be "fairly characterized as constituting speech on a matter of public concern." *Frank v. Relin*, 1 F3d 1317, 1328 (2d Cir. 1993); *Avery v. City of West Haven*, 2001 U.S. Dist. LEXIS 24394, *12-13 (D. Conn. 2001). A determination of whether the speech addresses a matter of public concern must be determined by the content, form and context of the statement, as revealed by the whole record. *Connick*, 416 U.S. at 148-49.

In this case, the plaintiff's speech did not address matters of "public concern." The plaintiff's speech concerned the plaintiff's status as employee versus independent contractor and a demand that the defendant rectify the wrongs relating to that classification. The entirety of the

plaintiff's speech concerned matters entirely personal to the plaintiff—the classification of her work and her entitlement to overtime wages.

As this Court has previously recognized, "[i]t is well-established that a 'public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is therefore not entitled to constitutional protection.'" *Larsen v. Lynch*, 1998 U.S. Dist. LEXIS 21932, *9 (D. Conn. 1998) (citations omitted). In this case, the plaintiff did not seek to inform the public that the defendant was not discharging its duties in the education of children. Nor did the plaintiff seek to bring to light actual or potential wrongdoing or breach of public trust on the part of the defendant. Further, the plaintiff's speech did not concern a system-wide miss-classification of workers or a system-wide failure to pay overtime wages. Indeed, as the Court found with respect to the speech at issue in *Connick*, if the issue of the defendant's alleged wrongful nonpayment of overtime wages to the plaintiff had been released to the public, such would convey no information at all other than the fact that a single employee was upset with the way her work had been classified and that she had not received overtime wages. In fact, the focus of the plaintiff's speech was not to evaluate generally the performance of the defendant but to gain a benefit personal to herself.

This case is similar to *Avery*, wherein the plaintiffs claimed their positions were eliminated for complaints about their union leadership and issues related to nonpayment of overtime. *Avery*, 2001 U.S. Dist. LEXIS 24394 at *14. As the court found in *Avery*, this Court should also find that none of the plaintiff's speech in this case is a matter of political, social or any other concern to the community. *Id.* "Speech on a purely private matter such as an employee's dissatisfaction with the conditions of [her] employment, does not pertain to a matter of public concern." *Id.*, quoting *Lewis v. Cohen*, 165 F.3d 154, 164 (2d Cir. 1999).

In sum, the plaintiff does not allege speech on any issue that is recognized as a matter of public concern, but only her own personal efforts to internally grieve about classification of her work and denial of overtime compensation, which does not touch upon any claim of system-wide wrongful classification or nonpayment of overtime compensation. *See Connick*, 461 U.S. at 141-49; *Saulpaugh v. Monroe Community Hosp.*, 4 F3d 134, 142-43 (2d Cir. 1993); *Reinhold v. Elma City*, 13 Fed. Appx. 734 (9th Cir. 2001) (claim for termination of employment in retaliation for exercise of protected right to petition for redress of grievances in the form of claim for overtime compensation failed because claim for overtime wages was not protected speech as it raised an issue of personal interest rather than a matter of public concern). Accordingly, the plaintiff's speech was private, not public, and thus not constitutionally protected.[7]  The defendant is, therefore, entitled to summary judgment as a matter of law on this claim.

---

[7] The analysis would be the same if the plaintiff had brought this claim under C.G.S. § 31-51q. *See, e.g., D'Angelo v. McGoldrick*, 1995 Conn. Super. LEXIS 2305 (Pickett, J.) (attached as Exhibit 5) ("an employee's speech and activities are not constitutionally protected unless they 'relate to matters of public concern and are voiced in such a manner as to contribute to the public discussion thereof; if . . . they relate solely to the employee's personal employment situation, and/or are so communicated so as to affect only the private adjustment of the employee's personal grievances, they are not constitutionally protected'") (citations omitted). *See, also, Li v. Travelers Ins. Co.*, Civ. No. 3:94cv1840(AHN) (D. Conn. 1996) (granting summary judgment for the defendant where the plaintiff claimed the defendant wrongfully terminated him for consulting with an attorney, as the content of the speech merely involved matters of private concern), citing *Urashka v. Griffin Hosp.*, 841 F. Supp. 468, 474-75 (D. Conn. 1994) for the proposition that it is the "content" of the plaintiff's speech that is protected by Section 31-51q. It is obvious, however, that the plaintiff did not bring her claim under C.G.S. § 31-51q. She did not identify that statute and did not allege one of the necessary elements—that her exercise of her first amendment rights did not substantially or materially interfere with her bona fide job performance or with her working relationship with her employer. *See Lowe v. Amerigas, Inc.*, 52 F. Supp. 2d 349 (D. Conn. 1999); *Sierra v. State of Conn.*, 2001 Conn. LEXIS 1604 (Beach, J.) (attached as Exhibit 6) (both identifying this allegation as necessary to plead and prove a claim under C.G.S. § 31-51q).

F.    The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim Of Sex Discrimination, Because The Plaintiff Cannot Establish Her Prima Facie Case In That She Did Not Apply For the Position In Question And She Was Otherwise Not Qualified For The Position, And Further Because The Plaintiff Cannot Meet Her Ultimate Burden of Proof That The Defendant Intentionally Discriminated Against Her (Amended Complaint, Paragraphs 17-18, 33)

The plaintiff asserts that the defendant intentionally and maliciously subjected the plaintiff to treatment different from that given to a similarly situated person, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and intentionally subjected the plaintiff to treatment different from that given to an otherwise similarly situated male, because of the plaintiff's sex, in violation of the Fourteenth Amendment to the United States Constitution. *See* Am. Compl. ¶¶ 17-18. The plaintiff brings these claims under 42 U.S.C. § 1983. The plaintiff also claims that the defendant discriminated against the plaintiff in her employment on the basis of her sex, in violation of Connecticut's Fair Employment Practices Act ("CFEPA"), C.G.S. §§ 46a-60, *et seq.*, and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq. See* Am. Compl. ¶ 33. The plaintiff essentially claims that the defendant intentionally and maliciously discriminated against her, on the basis of her sex, in the hiring of a male for a position posted after the termination of her position."[8] The defendant is entitled to summary judgment on these claims, because the plaintiff cannot make out her prima facie case because either nobody was hired for the position at issue or she did not apply for the position at issue, and otherwise because she was not qualified for either of the subsequent positions.

The Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." By this clause, all persons similarly

---

[8] There are no apparent allegations that the defendant intentionally discriminated against the plaintiff in the termination of her position.

circumstanced must be treated alike, but this does not require things that are different in fact or opinion to be treated in law as though they were the same. *Zandhri v. Dortenzio*, 228 F. Supp. 2d. 167, 180 (D. Conn. 2002). Conclusory statements or allegations or assertions that the plaintiff believes she was discriminated against are insufficient to satisfy a non-movant's burden of setting forth specific facts demonstrating the existence of a genuine issue for trial. *Id.* A claimant attempting to establish a claim under the Fourteenth Amendment's Equal Protection Clause must prove the discrimination was intentional. *Id.*, citing *Ricketts v. City of Hartford*, 74 F.3d 1397, 1407 (2d Cir. 1996).

The analysis of the plaintiff's claims of disparate treatment under the Equal Protection Clause and sex discrimination under Title VII would utilize the same four-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zandhri*, 228 F. Supp. 2d at 180. The test is as follows:

> Under McDonnell Douglas, [a] plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to [the] defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. [The] plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.

*Id.*, quoting *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (internal quotation marks, alterations, and citations

omitted).[9] The ultimate burden under the *McDonnell Douglas* test of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To make out a prima facie case of disparate treatment, the plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances that give rise to an inference of unlawful discrimination. *Id.* In this case, the plaintiff, a woman, has alleged that the defendant hired the plaintiff's replacement, that the replacement position was identical to the position the plaintiff had held, that the replacement hired was a male whose qualifications were no better or greater than the plaintiff's, and that the replacement was paid more and given more benefits than the plaintiff. Am. Compl. ¶¶ 15-16. The plaintiff cannot make out her prima facie case, because she was not qualified for either position that became available after her position was terminated by a restructuring of the technology department, and she did not apply for and was not qualified to fill the position that was ultimately filled. *See* Def's L.R. Stmt. ¶¶ 16-22. Further, the position the plaintiff had held was never re-filled; in fact, neither the first posted position nor the position ultimately filled was identical to the plaintiff's former position, and the person who filled the new position was better qualified for the position and was not paid more than the plaintiff had been paid. *Id.*

There are two subsequent positions that must be considered in analyzing the plaintiff's discrimination claim. Neither position was identical to the position the plaintiff had held, and

---

[9] It is well settled that the same legal standards apply to claims under CFEPA as to claims under Title VII. *See Rogers v. First Union Nat'l Bank*, 259 F. Supp. 2d 200, 204 (D. Conn. 2003), citing *Levy v. CHRO*, 236 Conn. 96, 107-08 (1994); *Sedotto v. Borg-Warner Protective Servs. Corp.*, 94 F. Supp. 2d 251, (D. Conn. 2000), citing *Newtown v. Shell Oil Co.*, 52 F. Supp. 2d 366 (D. Conn. 1999), and *Gorman v. Earmark, Inc.*, 968 F. Supp. 58 (D. Conn. 1997).

neither position was meant to replace the plaintiff's position. First, shortly after the plaintiff's position was terminated, the defendant posted a new Network/Technology Administrator position. *See* Def's L.R. Stmt. ¶ 13. The plaintiff applied for, but did not ultimately receive, the Network/Technology Administrator position. In fact, that position was never filled. *See* Def's L.R. Stmt. ¶ 17. The defendant had offered that position to a qualified woman, who was not the plaintiff, and although the offer was initially accepted, it was then rejected. *See* Def's L.R. Stmt. ¶ 15. The defendant never hired anyone for the Network/Technology Administrator position. Accordingly, to the extent the plaintiff's claim concerns the Network/Technology Administrator position, her claim fails, because nobody--not a man nor a woman--was ever hired for that position. Accordingly, the plaintiff cannot establish her prima facie case with respect to this position.

The second position to be considered is that of Network System Support, which was created five months after the plaintiff's position was terminated and after it became obvious that the Network/Technology Administrator position could not be filled. *See* Def's L.R. Stmt. ¶ 17. On May 20, 2002, the defendant hired Todd Lundgren to fill the Network System Support position. *See* Def's L.R. Stmt. ¶ 18. The plaintiff did not apply for that position. Accordingly, the plaintiff cannot establish her prima facie case with respect to this position. Nonetheless, even if she had applied, the plaintiff did not have the qualifications necessary for the position of Network System Support and cannot establish that her qualifications or credentials were sufficiently superior to those of Mr. Lundgren to allow her to prevail on this claim. The Second Circuit Court of Appeals has recognized that

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a

18

reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."

*Byrnie v. Town of Cromwell, Board of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (citation omitted).

The plaintiff cannot establish she was qualified for the Network System Support position, much less establish that her credentials or qualifications were so superior to Mr. Lundgren's credentials or qualifications that "no reasonable person, in the exercise of impartial judgment, could have chosen [Mr. Lundgren] over the plaintiff for the job in question." First, the plaintiff did not possess an associates or other college degree, and Mr. Lundgren did. *See* Def's L.R. Stmt. ¶ 21. Further, the responsibilities for the position were significantly different and more advanced than those the plaintiff had in her former position, and the plaintiff simply did not have the level of expertise and experience held by Mr. Lundgren to undertake those new responsibilities. *See* Def's L.R. Stmt. ¶¶ 20-22.

The position of Network System Support required the performance of such different duties and responsibilities as assisting building principals in maintaining and keeping current all isolated and networked software, maintaining licenses on all existing software, recommending purchases of all new software, and assisting with the application for technology or other approved grants. *See* Def's L.R. Stmt. ¶ 20. Upon applying for the Network System Support position in May 2002, Todd Lundgren, by correspondence and resume, represented an experience and educational level that exceeded the plaintiff's qualifications, in that he had experience in installation and configuration of networking equipment, Windows NT administration, implementation of company-wide courseware management system, A+

19

Certification in PC repair, and installation and design of a network wiring system. *See* Def's L.R. Stmt. ¶ 21. He also possessed a college degree. *Id.*

The plaintiff's credentials and qualifications cannot meet her weighty burden of establishing her credentials were sufficiently superior to those of Mr. Lundgren's. In fact, as the plaintiff testified, she could not always handle everything with the defendant's Novell computers, and by the time the defendant's computer system reached 500 computers and 9 servers, as early as 1999, the plaintiff believed the job was too much for her based on her training and experience. *See* Def's L.R. Stmt. ¶ 22. The plaintiff obviously already felt limited in the position she had, and new position required even greater abilities and skills she was not equipped to handle.

Finally, the plaintiff is incorrect in her presumption and assertion that Todd Lundgren was paid more than her and received better benefits. Todd Lundgren's compensation based on an annual salary of $35,000 is less than the plaintiff's compensation based on an annual salary of $42,500. *See* Def's L.R. Stmt. ¶¶ 23-24. Further, the plaintiff's benefits for sick leave and vacation were better than Mr. Lundgren's, and, had the plaintiff's position not been terminated, she would have been entitled to the same holidays as Mr. Lundgren, as the same holiday schedule, which has changed from time to time, is always applicable to all employees holding positions similar to those held by the plaintiff and Mr. Lundgren. *See* Def's L.R. Stmt. ¶ 25.

The plaintiff did not apply for the position filled by Mr. Lundgren, nor does she allege that she was prohibited from doing so. In any event, however, the position required an associates or college degree and carried different and greater responsibilities than her former position, and she simply was not qualified for it. Even if, however, the plaintiff could meet her burden of establishing a prima facie case, she cannot meet her final burden of proof.

Once the plaintiff meets her burden of establishing a prima facie case of disparate treatment, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254. The defendant need not persuade the court that it was actually motivated by the proffered reasons. *Id.* It is merely sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* Aside from the fact that the plaintiff cannot establish her prima facie case, even if she could, the defendant has shown that nobody was hired for the first position, and Todd Lundgren was hired five months after the plaintiff's position was terminated for yet another new position, which was different from the plaintiff's former position, and which not only required greater qualifications than those possessed by the plaintiff, but also required different and greater responsibilities.

As mentioned previously, the ultimate burden of persuasion always lies with the plaintiff to establish that the employer intentionally discriminated against her. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It is not enough to "disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Sava v. Gen. Elec. Co.*, 877 F. Supp. 81, 83 (D. Conn. 1995), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 113 S.Ct. 2742, 2754 (1993). Here, the plaintiff not only cannot establish her prima facie case, but she also cannot meet her ultimate burden of proving direct and intentional discrimination against her on the basis of her sex. Accordingly, the plaintiff is entitled to summary judgment on the plaintiff's claim for disparate treatment and sex discrimination.

## CONCLUSION

Based on the undisputed facts and law presented, there is no genuine issue as to any material fact that the defendant, Winchester Board of Education, is entitled to a summary judgment as a matter of law on the claims identified herein.

DEFENDANT,
**WINCHESTER BOARD OF EDUCATION**

Deborah E. Roser (ct 24005)
Peter J. Ponziani (ct 05265)
Litchfield Cavo
40 Tower Lane, Suite 200
Avon, CT 06001
(860) 255-5577
(860) 255-5566 (Fax)

22

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Defendant's Memorandum of Law in

Support of Defendant's Motion for Partial Summary Judgment was served by regular U.S. Mail,

postage prepaid, this 5th day of January, 2004, to:

John R. Williams, Esquire
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Mark J. Sommaruga
Sullivan, Schoen, Campane & Connon
646 Prospect Avenue
Hartford, CT  06105

Deborah E. Roser