UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERESSA SHAKER | : | |
| VS. | : | NO. 3:02CV1401(AWT) |
| WINCHESTER BOARD OF EDUCATION | : | FEBRUARY 9, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

*A.   RESPONSES TO DEFENDANT'S CLAIMS OF FACT*

1. Disagree. (Plaintiff's Responses to Defendant's Second Set of Interrogatories, ¶ 4; Plaintiff's Deposition Transcript, pp. 22-23)

2. Agree that the plaintiff entered into a contract. The contract speaks for itself and the plaintiff, accordingly, disagrees with the defendant's one-sided attempt to characterize that document.

3. Agree that the plaintiff continued to work for the defendant continuously until she was fired.

4. Agree.

5. Disagree. The documents are in evidence and speak for themselves. The defendant's attempt to characterize the contents and meaning of those documents is one-sided and inaccurate.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree that the defendant voted to fire the plaintiff at its meeting on December 11, 2001. Otherwise, disagree. (Villa transcript, pp. 49-51, 59-60, 62-63, 67; Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶¶ 2, 3)

12. Disagree. (Ibid.)

13. Agree that the new position was posted. Otherwise, disagree. (Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶ 3)

14. Disagree. (Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶ 3)

15. Agree.

16. Disagree. (Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶ 3)

17. Disagree. (Ibid.)

18. Disagree. (Plaintiff's Responses to Defendant's Second Set of Interrogatories, ¶ 1)

19. Agree.

20. Disagree. (Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶ 3)

21. Disagree. (Ibid.)

22. Agree that Mr. Villa was more experienced and had more training than either the plaintiff or the person hired to replace her. Otherwise, disagree. (Ibid.)

23. Disagree. (Villa transcript, pp. 49-51, 59-60, 62-63, 67; Plaintiff's Answers to Defendant's First Set of Interrogatories, ¶¶ 2, 3)

24. Agree.

25. Disagree. (Plaintiff's Responses to Defendant's Second Set of Interrogatories, ¶ 1)

26. Agree.

27. Disagree.

28. Agree that the plaintiff is entitled to receive unpaid overtime compensation for the years 1997 through 2000.

29. Disagree. (Plaintiff's Deposition Transcript, pp. 5-6, 63, 65)

B.   **PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1. David Villa, a retired captain with the Connecticut Department of Correction and a certified Novell technician, met with the defendant's Superintendent of Schools on August 1, 2001, and thereafter, at her request, examined the defendant's computer system and met with the plaintiff and John Coster, another of the defendant's employees. He understood that the plaintiff was in effect the defendant's systems administrator. (Villa Deposition Transcript, pp. 6-9, 11, 17-20)

2. The defendant at that time was operating its computer system on bootleg software to which it had no legal right. (Id. Pp. 21-22)

3. Mr. Villa got the defendant to renew its license and make its computer operation legal. He then persuaded the Superintendent of Schools to make some limited purchases necessary to update the system. (Id. p. 31)

4. Mr. Villa then upgraded the defendant's system, working closely with the plaintiff and with Joe Cifaldi, who was an educator who was transitioning into technology. (Id. pp. 31-34)

5. Before he had completed his work, Mr. Villa terminated his contract with the defendant in February of 2002. (Id. p. 39)

6. Beginning in the summer of 2001, members of the defendant Board of Education began contacting Mr. Villa repeatedly and asking him about the plaintiff. He repeatedly told them that the plaintiff was familiar with their system and was paid far less than any engineer would work for, and that if they wanted an engineer they should provide the plaintiff with that training. (Id. pp. 42-49)

7. In late September of 2001, a member of the defendant Board of Education came to Mr. Villa's house and told him that the Board wanted to hire him. Mr. Villa said he wasn't interested. The Board member said the Board didn't care what it took, "Shaker's going. Shaker's out of there." Mr. Villa pointed out that he was a member of the Civil Service Commission of the Town of Winchester and that he could not lawfully engage in such a conversation about a public employee. (Id. pp. 49-50)

8. The Board member returned to Mr. Villa's house several days later and repeated concerning the plaintiff that "she's going." Mr. Villa repeated that he did not want to be involved in this. (Id. p. 51)

9. The plaintiff performed her job in a competent manner. (Id. p. 56)

10. The defendant Board, in a public session, tried to get Mr. Villa to state that the problems with the defendant's computer system were the fault of the plaintiff. That was not the case and Mr. Villa refused to go along with such claims. (Id. pp. 59-60)

11. One day in November of 2001, Mr. Villa was summoned into the office of the Winchester Superintendent of Schools, who stated to him: "Teressa Shaker's getting fired tonight at the Board of Ed. I want you to go over and lock her out of all the systems. Revoke all her accounts." Mr. Villa told her he thought the Board was out of its mind. He explained that Mr. Cifaldi, the plaintiff's designated replacement, was a "nice guy, teacher, [but] hasn't got a clue at that moment in terms of how to operate anything." (Id. pp. 62-63)

12. Mr. Villa then met with Mr. Cifaldi, who greeted him with the statement: "She told you." Cifaldi than asked: "You going to lock out all the accounts now?" Mr. Villa asked Cifaldi whose name was supposed to go on the accounts after the plaintiff was locked out. Cifaldi replied: "I don't want it. I don't know what I'm doing with it." (Id. p. 64)

13. Mr. Villa had another conversation with members of the defendant Board in which he again told them they were making a big mistake in firing the plaintiff. He pointed out to them that they had tried to get him to "concoct some story about her being a failure" and told them that they "really need to have your heads examined...." Id. p. 67)

14. The following day, Mr. Villa came into the schools office and the plaintiff had been fired. "And the network is sitting there and Joe Cifaldi is sitting there scratching his head...." (Id. p. 68)

15. Members of the defendant's hiring committee, which hired Todd Lindgren to replace the plaintiff, have stated that Lindgren was paid more than $42,500 when he was hired in 2002. (Plaintiff's Responses to Defendant's Second Set of Interrogatories, ¶ 1)

16. The plaintiff holds a Novell certification, a PC Troubleshooting certification, and is a Certified Networking Engineer. (Id. ¶ 4)

17. The plaintiff was replaced by a male who had less experience than the plaintiff but was paid more money than the plaintiff. (Id. ¶ 6)

18. The plaintiff has been employed since July, 2003, as a Software Specialist by the Clinton Public Schools. (Id. ¶ 7)

19. The defendant falsely claimed that the plaintiff's termination was for "budgetary reasons." (Plaintiff's Responses to Defendant's First Set of Interrogatories, ¶ 2)

20. In fact, the plaintiff's job was given to a male with lesser qualifications than the plaintiff. (Ibid.)

21. Although the defendant claimed to have created a "new" position after firing the plaintiff, the plaintiff was fully qualified for that position and applied for it. All the other qualified applicants turned down the job. It was never offered to the plaintiff. (Id. ¶ 3)

22. The plaintiff was then told by the defendant "not to call about the position again." (Ibid.)

23. To avoid hiring the plaintiff, the defendant then changed the qualifications for the position, to add qualifications the Board knew the plaintiff did not possess. They thereupon hired a male for the position. The male had less experience than the plaintiff, but was paid more than she had been paid after five years of experience. (Ibid.)

24. After firing the plaintiff, the defendant Board also changed its rules so as to prohibit the plaintiff's daughter from attending Winchester public schools. (Id. ¶ 4)

25. The plaintiff was fired within days after her attorney had written to the defendant complaining that it had violated labor laws in refusing to compensate the plaintiff for her overtime. (Ibid.)

26. The plaintiff was not notified in advance of the meeting at which the defendant voted to fire her. She was given no opportunity to appear or to defend herself. She was told the following day that she had been fired. (Id. ¶ 6)

27. The plaintiff filed a wage and hour complaint with the Connecticut Department of Labor in December, 2001. (Plaintiff's Deposition Transcript, pp. 5-6, 63, 65)

28. The plaintiff has been certified since 1997 in both Novell and Microsoft. (Id. pp. 22-23)

29. The plaintiff retained an attorney in August of 2001 after the Superintendent of Schools informed her that three members of the Board of Education were attempting to negate the contract she had signed with the school system. (Id. pp. 41-42)

30. The Superintendent of Schools told the plaintiff that she should hire a lawyer because the defendant was going to attempt to fire her by eliminating her position. (Id. pp. 44-45)

31. The plaintiff's performance at work was always satisfactory and she never had any problems with any of her supervisors. Her only opponent was the Board of Education. (Id. pp. 45-46)

32. A member of the defendant Board went to the wife of one of the co-workers of the plaintiff's husband, early in 2001, and requested her to help "dig up dirt" on the plaintiff. (Id. p. 46)

33. At an executive session of the defendant Board, the member in question admitted having engaged in this conduct and admitted that it was wrong. (Id. p. 50)

34. After the plaintiff was fired, the "new" position which the defendant created was the same as the one the plaintiff had filled but paid $45,000 per year rather than the $42,500 per year which the defendant had been paying the plaintiff. The plaintiff was fully qualified for that position and applied for it. When all the other qualified applicants turned the position down, the defendant refused to offer it to the plaintiff. Id. pp. 71-77)

35. The defendant thereupon modified the job description for the "new" position in such a way as to make the plaintiff ineligible and gave it to a male applicant. (Id. p. 78)

        THE PLAINTIFF

BY:_____
    JOHN R. WILLIAMS (ct00215)
    51 Elm Street
    New Haven, CT 06510
    203/562-9931
    FAX:  203/776-9494
    E-Mail: jrw@johnrwilliams.com
    Her Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Mark J. Sommaruga, Esq., Sullivan, Schoen, Campane & Connon, 646 Prospect Avenue, Hartford, CT 06105; and Attorneys Peter J. Ponziani, and Deborah E. Roser at Litchfield Cavo, 40 Tower Lane, Suite 200, Avon, CT 06001.

_____
JOHN R. WILLIAMS