

FILED

2004 FEB -9 P 12: 13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERESSA SHAKER | : | |
| VS. | : | NO. 3:02CV1401(AWT) |
| WINCHESTER BOARD OF EDUCATION | : | FEBRUARY 9, 2004 |

### PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

#### A.    *Introduction*

The plaintiff was employed for many years as a computer technician by the

defendant, Winchester Board of Education.  She was wrongfully terminated in a

manner which violated many constitutional, statutory and common law rights.  The

factual basis of her claim, to the extent relevant here, has been set forth in detail in her

Local Rule 56 Statement, with supporting evidence, and will not be repeated here.

The defendant has moved for partial summary judgment as to some of the

plaintiff's claims.  Specifically, the defendant claims: (1) that a portion of the plaintiff's

FLSA and state statutory claim for unpaid overtime is barred by the statute of

limitations; (2) that the plaintiff was not the victim of unlawful sex discrimination in

violation of Title VII and the equal protection clause of the Fourteenth Amendment; (3)

that the plaintiff's termination was not retaliation for the exercise of *protected* speech

and therefore is not actionable as a First Amendment violation; and (4) that the plaintiff

has statutory remedies for the wrongful termination of her employment and therefore no state common law remedy.

## B.    *Standard of Review*

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970).  "[T]he moving party bears the ultimate burden of establishing its

right to summary judgment as a matter of law even when it does not have the ultimate

burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976,

982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve

factual disputes or make credibility determinations, even if the case is one which

eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420

(3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences

against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d

1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir.

1991). The evidence of the party against whom summary judgment is sought must be

believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must

construe the evidence in the light most favorable to the party opposing summary

judgment and deny the motion unless no construction of the evidence could support

judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398

U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d

Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment

Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5

F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105

(1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v.

Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary

judgment is sought, there is any evidence in the record from which a reasonable

inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state

of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing

Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.),

citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988). "[S]ummary

judgment...is particularly inappropriate where the inferences which the parties seek to

have drawn deal with questions of motive, intent, and subjective feelings and reactions."

Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994). "A

question of intent raises an issue of material fact, which cannot be decided on a motion

for summary judgment." Picataggio v. Romeo, 36 Conn. App. 791, 794, 654 A.2d 382

(1995).

### C.    The statute of limitations does not bar any portion of the plaintiff's FLSA or state statutory claim.

The defendant's claim of a partial statute of limitations bar to the plaintiff's claim

for overtime wages is based on its assertion that the plaintiff did not file a complaint with

the Connecticut Department of Labor.  The plaintiff, in her deposition, specifically

testified that she did file such a claim in December of 2001.

In addition, even if no such claim had been filed, the plaintiff alleges a continuing

course of refusal to pay overtime wages.  The defendant appears to acknowledge that,

as a matter of policy, it never paid overtime to the plaintiff regardless of the number of

hours she worked.  This is, therefore, a clear case of the sort of continuous course of

conduct which tolls the running of the statute of limitations until the last act in that

course of conduct. E.g., Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).

**D.     *Among other things, the plaintiff's evidence supports a finding that the plaintiff was terminated for reasons which violate important public policy but for which there is no other remedy.***

The defendant correctly asserts that, under Connecticut law, an action for the wrongful termination of at-will employment will lie only if the termination violates an important public policy for which there is no other remedy available to the plaintiff.  The plaintiff's evidence is sufficient to warrant a jury in finding, *inter alia*, that she was fired because of her sex or because of her exercise of her First Amendment right of free speech, as discussed below.  The evidence also would support, however, a conclusion that the plaintiff was fired for seeking to enforce statutory rights sufficiently personal in nature as to be outside the protection of the First Amendment.  The plaintiff's evidence, for example, would support a finding that she was fired promptly after her lawyer wrote to the defendant Board complaining that its failure to pay overtime wages was unlawful. The testimony of David Villa, the defendant's computer consultant, also would support a conclusion that the plaintiff was fired for "political" reasons unrelated to her job performance.  As Mr. Villa, who also served as the Chairman of the Winchester Civil Service Commission, testified, the actions of the defendant in respect to the plaintiff were contrary to the spirit, and perhaps the letter, of local civil service regulations.  This again would be a termination in violation of important public policy without any other available remedy.  The plaintiff is entitled to her day in court on this issue.

**E.      The evidence sufficiently supports a claim that the plaintiff was fired for exercising speech on matters of public concern protected by the First Amendment.**

The evidence would support a jury conclusion that the plaintiff was fired because she filed a complaint with the Connecticut Department of Labor concerning the defendant's habitual and intentional violation of state labor laws.  The defendant claims any such speech is personal in nature and not protected by the First Amendment.

A public employee challenging discipline imposed because of his speech "must initially demonstrate...that:  (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Hale v. Mann, 219 F.3d 61, 70 (2d Cir. 2000); Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000).

Discipline of a municipal employee for reporting possibly criminal wrongdoing in his agency to the FBI or other officials almost always is actionable under Section 1983 as a First Amendment violation.  Dobosz v. Walsh, 892 F.2d 1135, 1141-42 (2d Cir. 1989); Vasbinder v. Ambach, 926 F.2d 1333 (2d Cir. 1991); Robinson v. Balog, 160 F.3d 183 (4th Cir. 1998); Forsyth v. City of Dallas, 91 F.3d 769 (5th Cir. 1996); Gorman v. Robinson, 977 F.2d 350 (7th Cir. 1992); Hafley v. Lohman, 90 F.3d 264 (8th Cir. 1996); Cooper v. Smith, 89 F.3d 761 (11th Cir. 1996); Fikes v. City of Daphne, 79 F.3d 1079 (11th Cir. 1996).  In fact, such speech is protected even if the employee does no

more than gripe about the illegalities to his peers, <u>Chateaubriand v. Gaspard</u>, 97 F.3d

1218 (9th Cir. 1996); or to his supervisors, <u>Paradis v. Montrose Memorial Hospital</u>, 157

F.3d 815 (10th Cir. 1998). "[O]ur inquiry focuses on the nature of the information, not

its audience." <u>Baldassare v. State of New Jersey</u>, 250 F.3d 188, 197 (3rd Cir. 2001).

"The private nature of the statement does not...vitiate the status of the statement as

addressing a matter of public concern." <u>Rankin v. McPherson</u>, 483 U.S. 378, 387 n. 11

(1987).

Although such complaints may be subject to a balancing test under <u>Pickering v.</u>

<u>Board of Education</u>, 391 U.S. 563, 568 (1968), comparing the importance of this kind of

free speech exercise to its potentially disruptive effect in the workplace, the importance

of such speech is so great that the balance almost always must be struck in favor of its

exercise, so that punishment for doing so is actionable.  *E.g.*, <u>Branton v. City of Dallas</u>,

272 F.3d 730 (5th Cir. 2001) (police internal affairs officer entitled to sue for First

Amendment violation for discipline imposed because she improperly had an *ex parte*

communication with a police hearing officer in which she reported concerns that an

officer had committed perjury at the hearing); <u>Sexton v. Martin</u>, 210 F.3d 905 (8th Cir.

2000); <u>Prager v. LaFaver</u>, 180 F.3d 1185 (10th Cir. 1999); <u>Peterson v. City of Hartford</u>,

80 F. Supp. 2d 21 (D. Conn. 1999) (Goettel, J.); <u>Dillon v. Bailey</u>, 45 F. Sup. 2d 167 (D.

Conn. 1999) (Arterton, J.).  "The content of the employee's speech is an important

consideration in determining the extent of the employer's burden to show likely

disruption.  An employee's charge of unlawful conduct is given far greater weight than is

a complaint as to the fairness of internal office operations." Dangler v. New York City
Off Track Betting Corp., 193 F.3d 130, 140 (2d Cir. 1999).

A deputy sheriff's statement in the presence of a newspaper reporter, criticizing
the sheriff for requiring only African-American deputies to attend a meeting, was held to
be on a matter of public concern and thus protected speech. Victor v. McElveen, 150
F.3d 451 (5th Cir. 1998). A police officer transferred from the elite mounted patrol to a
training officer in the police academy, in response to her filing of a complaint with the
EEOC about sexual harassment stated a valid claim for retaliation for the exercise of
protected speech in violation of the First Amendment. Sharp v. City of Houston, 164
F.3d 923 (5th Cir. 1999).

If the problem in the employee's job is that she is being discriminated against
because of race or sex or age or disability, in violation of state or federal law, then the
issue certainly is one of public concern since the public in enacting those laws was and
remains concerned that they be obeyed by public officials. Hall v. Missouri Highway &
Transportation Commission, 235 F.3d 1065, 1067 (8th Cir. 2000); Crain v. Board of
Police Commissioners, 920 F.2d 1402, 1411 (8th Cir. 1990). "A personal aspect
contained within the motive of the speaker does not necessarily remove the speech
from the scope of public concern." Greer v. Amesqua, 212 F.3d 358, 371 (7th Cir.
2000). So a Transit Authority worker who publicly complained about lack of safety
protections on his job was held to have been speaking about matters of such great
public concern that the defendants' argument that these were purely personal issues
"borders on the frivolous." Munafo v. Metropolitan Transp. Authority, 285 F.3d 201,

211-12 (2nd Cir. 2002). Even if the employee's speech is predominantly concerned with personal matters, the presence therein of matters of public concern will afford that speech First Amendment protection. At most, a Pickering-style balancing test might be employed to see just how much protection is appropriate. Finn v. New Mexico, 249 F.3d 1241 (10th Cir. 2001).

An assistant city administrator's statements to an alderman that rumors were circulating that the city administrator was having an extramarital affair with a city employee and that the city employee was receiving in return benefits to which she was not entitled, although arguably the basest sort of intra-office gossip, was held to be a matter of public concern protected by the First Amendment since public funds were involved. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). A fire department shift captain's vocal concern about the men downloading porn during their off hours likewise was held to be speech on a matter of public concern, and thus protected. Hufford v. McEnaney, 249 F.3d 1142 (9th Cir. 2001).

A library supervisor's letter criticizing security at the library, circulated internally on a "need to know" basis, was protected by the First Amendment in a case which contains a lengthy analysis of many cases in this area. Kennedy v. Tangipahoa Parish Library Board of Control, 224 F.3d 349 (5th Cir. 2000). A health inspector's statement that an open-air market was being permitted to operate unlawfully was speech protected by the First Amendment. Myers v. Hasara, 226 F.3d 821 (7th Cir. 2000). A professor's complaints about a fellow professor's alleged plagiarism, abuse and harassment of students and staff, misuse of state funds and receipt of kickbacks was

protected speech.  Hulen v. Yates, 322 F.3d 1229 (10th Cir. 2003).  Statements by

police officers to fellow officers and the president of the police union, expressing

concern about a direct order of a supervisor suspending investigation into a shooting

case, were constitutionally protected.  Gustafson v. Jones, 290 F.3d 985 (7th Cir. 2002).

"Obviously, speech that focuses on police departments (and ultimately police protection

and public safety) involves matters of great public concern."  Glass v. Dachel, 2 F.3d

733, 741 (7th Cir. 1993).  "It would be difficult to find a matter of greater public concern

in a large metropolitan area than police protection and public safety."  Auriemma v.

Rice, 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc).  And, in a variation on a recurring

theme, a county employee's report that he had seen the county road superintendent

and a department secretary having sex was held to be a matter of public concern and

protected by the First Amendment.  Domina v. Van Pelt, 235 F.3d 1091 (8th Cir. 2000).

In determining whether the speech is on a matter of public concern, the court

must consider whether it is a matter of political, social or some other concern to the

community at large, as distinct from being a matter of purely private or personal

interest.  In making this determination, the court will weigh the content, form and context

of the speech in view of the entire record.  The fact that the statement is made in

private, however, does not make it unprotected.  Kincade v. City of Blue Springs, 64

F.3d 389 (8th Cir. 1995).

However, "when the Supreme Court in its cases establishing and bounding the

rights of public employees to exercise free speech limited those rights to speech on

matters of 'public concern,' they did not mean matters of transcendent importance, such

as the origins of the universe or the merits of constitutional monarchy; they meant

matters in which the public might be interested, as distinct from wholly personal

grievances -- which whether or not protected by the First Amendment are too remote

from its central concerns to justify judicial interference with the employment relation,

Connick v. Myers, 461 U.S. 138, 147 (1983) -- and casual chit-chat, which is not

protected by the First Amendment at all.  Swank v. Smart, 898 F.2d 1247, 1251 (7th

Cir. 1990)."  Dishnow v. School Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996)

(Posner, C.J.).  Thus, the plaintiff in Brown v. Disciplinary Committee of Edgerton

Volunteer Fire Dept., 97 F.3d 969 (7th Cir. 1996), engaged in protected free speech

when he publicly criticized a decision to change the name of the "Edgerton Fire Depart-

ment" to "Edgerton Fire District."  And a public employee fired because she reported an

incident of sexual harassment had in so complaining spoken on a matter of public

concern.  Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997).

The public complaint of a female employee about the governmental employer's

assertedly inadequate response to sexual harassment issues in the workplace is on a

matter of public concern and thus protected.  Schuler v. City of Boulder, 189 F.3d 1304,

1308 (10th Cir. 1999).  A highway department employee's memorandum to his

supervisor concerning traffic safety and snow removal at a particular intersection,

although obviously related to the work of the agency, also was on a matter of public

concern and protected.  Lee v. Nicholl, 197 F.3d 1291 (10th Cir. 1999).  Complaints by

an employee of a public agency "relating to...alleged mismanagement of government

funds and violations of [the agency's] bylaws...are clearly matters of public concern."

Gorman-Bakos v. Cornell Cooperative Extension of Schnectady County, 252 F.3d 545, 553 n. 4 (2nd Cir. 2001).  Cf., Vasbinder v. Scott, 976 F.2d 118, 119-20 (2nd Cir. 1992); Keyser v. Sacramento City Unified Sch. Dist., 238 F.3d 1132, 1137 (9th Cir. 2001); Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir.), cert. denied, 515 U.S. 1161 (1995).

"[P]laintiffs' interest in communicating ethnic pride as members of the NYPD is not necessarily a matter only of private concern.  A statement is of public concern if, in light of 'the content, form and context of [that] statement, as revealed by the whole record,' it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'...The parades in which plaintiffs seek to march...are themselves about ethnic pride and celebrating ethnic participation in the civic life of New York City." Latino Officers Association, New York, Inc. v. The City of New York, 196 F.3d 458, 466 (2d Cir. 1999).  Citing Connick v. Myers, 461 U.S. 138, 146 (1983); Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

**F.    The evidence sufficiently supports the plaintiff's claim of sex discrimination in violation of both Title VII and the Equal Protection Clause.**

As delineated in the plaintiff's Local Rule 56 Statement, the evidence in this case is sufficient to establish (1) that the plaintiff was a member of a protected class, female; (2) that she was replaced by a person not a member of her class; (3) that she was qualified for the position; and (4) that the reasons stated by the defendant for replacing her were false.  The circumstances underlying the blatantly false excuses given for

terminating the plaintiff are sufficient to support the usual inference that the defendant's true reason was the plaintiff's sex.

"In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). "To make out a prima facie case, the plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.). Stated another way, a plaintiff may make out a *prima facie* case "by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action...; and that a similarly situated employee not in the relevant protected group received better treatment." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001). "To establish a prima facie case of disparate treatment, a plaintiff must show, *inter alia*, that she was subjected to adverse employment action, under circumstances giving rise to an

"[T]he prima facie case...includes a showing that the plaintiff was 'qualified' for the position." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "To satisfy the second element of the test, [the plaintiff] need...only demonstrate that he 'possesses the basic skills necessary for performance of [the] job.'" De La Cruz v. New York City Human Resources Administration Department of Social Services, 82 F.3d 16, 19 (2d Cir. 1996). Citing Powell v. Syracuse University, 580 F.2d 1150, 1155 (2d Cir.), cert. denied, 439 U.S. 984 (1978); Owens v. New York City Housing Authority, 934 F.2d 405, 409 (2d Cir.), cert. denied, 502 U.S. 964 (1991).

The employer, of course, may seek to rebut the prima facie case by proof of a legitimate nondiscriminatory reason for the adverse employment action. If the plaintiff is able to persuade the jury that the employer's explanation is false, however, that fact, combined with the prima facie case, is sufficient to permit a jury to find intentional discrimination. "Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

inference of prohibited discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001).

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' Burdine, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is de minimis." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence. See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.')." Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Often, "[w]hat is most revealing of the true intention behind the [adverse employment action] is the timing." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

"[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis...." Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). Citing Tarshis v. Riese Organization, 211 F.3d 30, 36 (2d Cir. 2000); Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1239 (2d Cir. 1995).



## CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Mark J. Sommaruga, Esq., Sullivan, Schoen, Campane & Connon, 646 Prospect Avenue, Hartford, CT 06105; and Attorneys Peter J. Ponziani, and Deborah E. Roser at Litchfield Cavo, 40 Tower Lane, Suite 200, Avon, CT 06001.

_____

JOHN R. WILLIAMS