UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERESSA SHAKER | : | CIVIL ACTION NO. |
| | : | 3:02-CV-1401(AWT) |
| VS. | : | |
| | : | |
| WINCHESTER BOARD OF EDUCATION | : | FEBRUARY 24, 2004 |

### DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The defendant, Winchester Board of Education, hereby replies to the Plaintiff's Brief in Opposition to Motion for Summary Judgment. The defendant addresses the plaintiff's opposition arguments by restating the defendant's arguments in the order originally presented.

A.  The Standard For Summary Judgment

   The defendant has no reply but relies on its original argument.

B.  The Defendant Is Entitled to Partial Summary Judgment On The Plaintiff's Claim for Overtime Compensation Based On Expiration of The Statutes of Limitations (Amended Complaint, Paragraphs 10, 25 and 28)

   The plaintiff addresses this argument in paragraph C of her Brief. The plaintiff cites no authority specifically and directly disputing the defendant's argument that a cause of action for nonpayment of overtime accrues each paycheck, so that a separate cause of action accrues each payday when overtime compensation is excluded. Citing a case concerning a "continuous practice and policy of discrimination", the plaintiff attempts to assert that her claim constitutes a "continuing course of refusal to pay overtime wages". However, the plaintiff cites no authority that a *failure to pay overtime* constitutes a "continuous practice and policy" sufficient to delay the statute of limitations period. In act, the authority is otherwise.

In an effort to effect a tolling of the state's two-year statute of limitations, the plaintiff asserts she filed a claim with the Connecticut Department of Labor ("DOL").[1] That assertion is without merit. The plaintiff had not produced, and cannot produce any evidence that she filed such a claim. In fact, the plaintiff never filed such a claim. *See* attached composite Exhibit A (copy of letter requesting copy of records from the DOL regarding the plaintiff's claim; and original letter from the DOL indicating no claim was filed or pending regarding the plaintiff).[2]

Accordingly, to the extent the plaintiff is entitled to any unpaid overtime compensation, the plaintiff's claims for overtime compensation which date back prior to August 13, 2000, are barred by the statutes of limitations, and the defendant is entitled to partial summary judgment as a matter of law in regard thereto.

C. The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim For Retaliation For Complaining Of The Defendant's Failure To Pay Legally Required Wages, Because The Plaintiff Has No Independent Cause Of Action Against The Defendant For Such Retaliation And Has Otherwise Failed To Exhaust Her Administrative Remedies (Amended Complaint, Paragraph 26)

The plaintiff does not directly address this argument in her Brief. That is, the plaintiff's brief does not address the defendant's argument that the plaintiff's claim for retaliation fails because the plaintiff failed to exhaust her administrative remedies provided by C.G.S. § 31-69b. That section provides the remedy, through the DOL, for an employee whose employment is terminated in retaliation for filing a wage complaint with the DOL.[3] That section also provides an appeal process if a party is aggrieved by the DOL's decision. Although an employee has a

---

[1] The plaintiff makes no argument for extension of the Federal statute of limitations period to three years, which would require evidence of a willful violation.
[2] The plaintiff also never filed a claim with the U.S. Department of Labor. *See* attached composite Exhibit B (copy of letter requesting copy of records from U.S. Department of Labor regarding the plaintiff's claim; and original letter from U.S. Department of Labor indicating it has no record of any investigation of the Town of Winchester).
[3] The plaintiff cannot even prove she filed a claim for overtime compensation with the DOL. *See* Section B above.

2

right of appeal once the DOL decision is rendered, the employee has no right to bring a direct action against his or her employer for violation of section 31-69b.

Given the plaintiff never filed a wage complaint with the DOL and never filed a complaint with the DOL alleging the defendant retaliated against her for filing such a wage complaint, the defendant is entitled to summary judgment on the plaintiff's claim for retaliation for complaining of the defendant's failure to pay overtime wages, because the plaintiff has no right of direct action therefor against the defendant, the plaintiff never filed a claim for overtime compensation with the DOL, and the plaintiff failed to exhaust her administrative remedies.

D.  <u>The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim For Termination Of Employment In Violation Of Public Policy, Because The Plaintiff Otherwise Has An Available Remedy</u> (Amended Complaint, Paragraph 27)

The plaintiff addresses this argument in paragraph D of her Brief. The mainstay of the defendant's argument is that the plaintiff's claim that the defendant violated public policy fails because the plaintiff otherwise has available remedies. The plaintiff offers nothing authoritative to oppose the fundamental rule presented by the defendant's argument. Further, the plaintiff offers no substantive argument that she has no available remedies.

The plaintiff first asserts that the public policy violated was being fired either because of her sex or because she exercised her First Amendment right of free speech. Regarding her claim of sex discrimination, both federal and state statutes provide the plaintiff with administrative and judicial remedies for claims of sex discrimination. Indeed, that the plaintiff has and is pursuing all of those remedies, including in this action, makes the plaintiff's opposing argument frivolous.

Regarding the plaintiff's claim that she was fired because she exercised her First Amendment right of free speech, the defendant has already established that the plaintiff had an

3

available remedy under C.G.S. § 31-51q. The fact that the plaintiff has not pursued that remedy is of no consequence to the defendant's argument.

The plaintiff also seems to assert that public policy was violated because she was fired for "seeking to enforce statutory rights sufficiently personal in nature to be outside the protection of the First Amendment." The plaintiff does not, however, identify the "statutory" rights on which she relies. The defendant is left once again to guess what claim the plaintiff asserts. To the extent the plaintiff here refers to the statutory right to payment of overtime compensation, the plaintiff fails to explain how she could possibly argue that she has no remedy for that claim when, as set forth above, Connecticut Statutes provide her with administrative, appellate and judicial remedies related to claims for nonpayment of overtime and retaliation. Again, the fact that the plaintiff has not pursued her administrative remedies is of no consequence to the defendant's argument, but the plaintiff is pursing in this action her statutory right to seek recovery of unpaid overtime compensation.

The plaintiff appears also to assert that public policy was violated based on a conclusion, supposedly supported by the vague testimony of a uninformed non-employee, David Villa, that the plaintiff was fired for "political" reasons. However, there is no evidence the defendant was motivated to terminate the plaintiff's position for these unspecified "political" reasons. Further, there is no evidence the plaintiff was a "civil service" employee subject to "local civil service regulations". In fact, the plaintiff has never before made this allegation and fails even now to identify specifically the regulation violated and further fails to assert that she had no remedy under those regulations. The defendant is at a loss to controvert such unclear assertions.

4

The plaintiff having failed to meet her burden of showing she is otherwise without remedy, the defendant is entitled to summary judgment as a matter of law on the plaintiff's claim for termination of employment in violation of the public policy of the State of Connecticut.

E.   <u>The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim That The Defendant Subjected Her To Adverse Employment Action In Retaliation For Her Exercise Of Her Rights Of Freedom Of Speech, Freedom To Petition For Redress Of Grievances, And Freedom To Associate Herself With An Attorney, In Violation Of The First Amendment Of The U.S. Constitution, Because The Speech At Issue Was Not A Matter Of Public Concern</u> (Amended Complaint, Paragraph 19)

The plaintiff addresses this argument in paragraph E of her Brief. The mainstay of the defendant's argument is that the plaintiff's speech did not address a matter of public concern. The defendant argues she "was fired because she filed a complaint with the Connecticut DOL concerning the defendant's habitual and intentional violation of state labor laws". However, as the evidence shows, the plaintiff never filed such a complaint. *See* Section B above. On that basis alone, summary judgment should enter for the defendant on this claim.

Notwithstanding and in any event, the plaintiff fails to meet her burden of establishing that her speech can be "fairly characterized as constituting speech on a matter of public concern." The plaintiff's speech concerned the plaintiff's status as employee versus independent contractor and a demand that the defendant rectify wrongs relating to that classification. The entirety of the plaintiff's speech concerned matters entirely personal to the plaintiff—the classification of her work and her entitlement to overtime wages.[4] The plaintiff cites no case that would support the argument that such speech concerns matters of public concern.

Although the plaintiff cites cases from all over the country, none concern speech regarding worker classification or nonpayment of overtime compensation. Those cases concern

---

[4] Indeed, in Section D of her Brief, the plaintiff herself implies that the rights she was pursuing were "personal". There she states "[t]he evidence would support, however, a conclusion that the plaintiff was fired for seeking to enforce statutory rights sufficiently *personal* in nature as to be *outside the protection of the First Amendment*." (emphasis added).

5

reporting of criminal wrongdoing in law enforcement agencies; systemic illegal misuse of funds; refusal to perform illegal activities; and safety for the work force, the public and young children.

If this were a case in which the plaintiff sought to inform the public that the defendant was not discharging its duties in the education of children or sought to bring to light a breach of public trust or a concern for system-wide miss-classification of workers or system-wide failure to pay overtime wages, the argument perhaps would not be the same. However, this case concerns a single employee upset with the way her work had been classified and that she had not received overtime wages. The focus of the plaintiff's speech was not to evaluate generally the defendant's performance of its work in educating children or to gain a benefit for all of the defendant's employees or the public, but it was to gain a benefit personal to herself.

The majority of cases found on this issue around the country support the defendant's argument, including *Avery v. City of West Haven*, 2001 U.S. Dist. LEXIS 24394, *12-13 (D. Conn. 2001), cited in the defendant's Memorandum of Law. *See also, Herrera v. Weathers*, 1995 U.S. App. LEXIS 34341, *4 (10th Cir. 1995) (agreeing with district court that plaintiff's claim that he was fired in retaliation for bringing a FLSA claim against his employer "is not protected First Amendment activity because the claim—for nonpayment of overtime compensation—is not a matter of public concern"), citing *Connick v. Myers*, 461 U.S. 138 (1983); *Lehman v. Sturza*, 1994 U.S. App. LEXIS 17006, *11-12 (4th Cir. 1994) (plaintiff's claim that his discharge violated his First Amendment rights because he was discharged in retaliation for his earlier success in contesting a discharge and his overtime pay computation failed because "it is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern"), quoting *Connick*, 461 U.S. at 148; *Mansoor v. County of Albemarle*, 189 F. Supp. 2d 426, 437 (W.D. Va. 2002) (recognizing that "many of the

6

issues raised by the plaintiff in his letters, email and conversations either were not matters of public concern, such as pay scales, vehicle take home policies, and his personal overtime hours, or they were not made by the plaintiff as a private citizen, but as an employee"); *Whitehurst v. Abel*, 1995 U.S. Dist. LEXIS 21664, *22-23 (N.D. Miss. 1995) (complaint that alleges employer was not properly paying overtime in violation of the FLSA does not rise to the level of public concern but relates instead to matters of individual desires and interests); *Donahue v. New York City Dep't of Probation*, 1989 U.S. Dist. LEXIS 12154, *16-17 (S.D.N.Y. 1989) (as to matters relating to overtime, employee spoke "as an employee upon matters only of personal interest"), citing *Connick*, 461 U.S. at 147; *Lynn v. Smith*, 628 F. Supp. 283, 289 (M.D. Pa. 1985) (grievances that relate to overtime "are clearly not matters of public concern but are of a personal employer-employee nature and not protected by the First Amendment").

As this Court has previously noted, "[t]he fact that [] information may be of general interest to the public . . . does not make it of 'public concern' for First Amendment purposes," else "virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case". *Riccio v. City of West Haven*, 196 F. Supp. 2d 181, 190 (D. Conn. 2002), quoting *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir 1988), quoting *Connick*, 461 U.S. at 149. Given that the plaintiff does not allege speech on any issue that is recognized as a matter of public concern, but concern only her own personal efforts to internally grieve about classification of her work and denial of overtime compensation, which does not touch upon any claim of system-wide wrongful classification or nonpayment of overtime compensation, the defendant is entitled to summary judgment as a matter of law on this claim.

F. <u>The Defendant Is Entitled To Summary Judgment On The Plaintiff's Claim Of Sex Discrimination, Because The Plaintiff Cannot Establish Her Prima Facie Case In That She Did Not Apply For the Position In Question And She Was Otherwise Not Qualified For The Position, And Further Because The Plaintiff Cannot Meet Her Ultimate Burden of Proof That The Defendant Intentionally Discriminated Against Her (Amended Complaint, Paragraphs 17-18, 33)</u>

The plaintiff addresses this argument in paragraph F of her Brief. The plaintiff offers no more than conclusory assertions that she believes she was discriminated against, which are insufficient to satisfy her burden of setting forth specific facts demonstrating the existence of a genuine issue for trial. Further, the plaintiff offers nothing to establish that the claimed discrimination was intentional.[5]

The plaintiff asserts experience and qualifications not supported by the record evidence. In fact, according to the plaintiff's own testimony and discovery responses, her Novell certification was out of date when the new system was installed by David Villa, underlying software problems were beyond her education and expertise, and as early as 1999, the job was too much for her based on her training and experience[6]. The plaintiff makes no more than bald assertions that she was qualified for the two positions posted after her position was terminated. The plaintiff presents no evidence to dispute the defendant's Affidavit of Joseph Cifaldi, a hiring committee member, that the hiring committee did not offer the first posted position to her because it did not consider her qualified. As the plaintiff's own statement of facts indicate, in the

---

[5]The plaintiff argues that the defendant gives "blatantly false excuses . . . for terminating the plaintiff". However, the plaintiff has heretofore made no allegations that the defendant intentionally discriminated against the plaintiff in the *termination* of her position. In fact, when asked to state with specificity all facts which form the basis for her claim that the defendant intentionally discriminated against her on the basis of her sex, she responded on December 4, 2003 as follows: "Todd Lundgren, a male, was hired to replace me. Mr. Lundgren, I was told at the time, made more money and had less experience." The plaintiff cannot now create new claims.

[6]Although the plaintiff asserts that David Villa believed she performed her job in a competent manner, his actual testimony shows he had no authority or competence to evaluate her performance and he believed "she possessed the rudimentary skills to operate the system" but "wasn't an engineer". (*See* Villa Deposition Transcript pp. 56-57).

defendant's pursuit of employment by David Villa, the defendant was obviously interested in filling a position much more advanced than that held by the plaintiff.

Further, although the plaintiff asserts that some members of the Board talked to David Villa about the plaintiff, Mr. Villa's testimony shows that the discussions concerned the plaintiff's position and the possible hiring of David Villa--nothing of a personal nature with respect to the plaintiff. In fact, nothing in David Villa's testimony or the record anywhere establishes that the plaintiff's position was terminated for any reason other than that the defendant wished to create and fill a more advanced position.

Finally, even if the Court believed Todd Lundgren replaced the plaintiff in the same position, the record is clear with respect to the qualifications of, and salary and benefits paid to the plaintiff and Todd Lundgren. Although the plaintiff asserts that members of the hiring committee make some representations with respect to Todd Lundgren's qualifications and salary, the actual records of the defendant speak for themselves, and unauthorized statements made by unqualified employees cannot dispute those records.

The plaintiff's statement of facts is filled with unsupported statements. For example, although the plaintiff states she was fired "within days" after her attorney wrote to the defendant complaining it had violated labor laws in refusing to compensate the plaintiff for her overtime (*see Plaintiff's L.R. 56 Statement hereinafter "Pl's Fact Stmt."*), ¶ B.25), that correspondence was not produced with the plaintiff's Brief, and the undersigned is unaware of its existence. Further, the plaintiff attempts to manipulate the facts by mischaracterizing her own deposition testimony as referenced in Pl's Fact Stmt. ¶ B.30--the plaintiff never testified that she was told the defendant was going to "attempt to fire her" by eliminating her position. Finally, the plaintiff attempts to assert inadmissible double or triple hearsay in Pl.'s Fact Stmt. ¶ 32.

9

Given that the plaintiff cannot establish her prima facie case because she was not qualified for either position,[7] and given that she also cannot meet her ultimate burden of proving direct and intentional discrimination against her on the basis of her sex, the defendant is entitled to summary judgment on the plaintiff's claim for disparate treatment and sex discrimination.

DEFENDANT,
WINCHESTER BOARD OF EDUCATION

Deborah E. Roser (ct 24005)
Peter J. Ponziani (ct 05265)
Litchfield Cavo
40 Tower Lane, Suite 200
Avon, CT 06001
(860) 255-5577
(860) 255-5566 (Fax)

### CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Defendant's Reply to Plaintiff's Brief in Opposition to Motion for Summary Judgment was served by regular U.S. Mail, postage prepaid, this 24th day of February, 2004, to:

John R. Williams, Esquire
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Mark. J. Sommaruga, Esquire
Sullivan, Schoen, Campane & Connon
646 Prospect Avenue
Hartford, CT  06105

Deborah E. Roser

---

[7] The plaintiff's argument at the 15th page of her Brief that the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the analysis is misleading. The argument ignores the other prongs of the test. Indeed, the court in *Tarshis v. Riese Organization*, 211 F.3d 30, 36 (2d Cir. 2000), cited by the plaintiff to support this argument, says that the *fourth* prong of the test is satisfied if the plaintiff is replaced by someone outside the protected class. The defendant does not dispute that a man was hired to fill the new position. The dispute presently at issue is whether the plaintiff was qualified for the new position. Hence, this argument of the plaintiff effectively adds nothing to aid the analysis here.